```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3       *  *  *  *  *  *  *  *  *  *  *  *  *  *
         *UNITED STATES OF AMERICA    *
 4                                    *    CRIMINAL ACTION
                    v.                *    No. 05-30031-RGS-3
 5       *                            *
         NICHOLAS DIAZ                *
 6                                    *
         *  *  *  *  *  *  *  *  *  *  *  *  *  *
 7

 8

 9              BEFORE THE HONORABLE RICHARD G. STEARNS
                    UNITED STATES DISTRICT JUDGE
10                           DISPOSITION
                          July 30, 2007
11

12       APPEARANCES:

13              UNITED STATES ATTORNEY'S OFFICE, (By AUSA Alex J.
         Grant, AUSA), Federal Building & Courthouse, 1550 Main
14       Street, Room 310,  Springfield, Massachusetts  01103, on
         behalf of the United States of America
15
                LAW OFFICES OF CRAIG T. CAMERLIN, (By Craig T.
16       Camerlin, Esq.), 1441 Main Street, Suite 900,
         Springfield, Massachusetts   01103, on behalf of
17       Defendant

18       ALSO PRESENT:

19        U.S. Probation Officer Richard Rinaldi

20
                                    Courtroom No. 2
21                                  1550 Main Street
                                    Springfield, Massachusetts 01103
22

23
                       James P. Gibbons, RPR, RMR
24                       Official Court Reporter
                       1 Courthouse Way, Suite 7205
25                     Boston, Massachusetts  02210
                            (617) 428-0402
```

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  Criminal No. 05-30031-RGS, United
 3    States of America v. Nicholas Diaz.
 4              THE COURT:  Would counsel please identify
 5    themselves for the record.
 6              MR. GRANT:  Alex Grant for the United States.
 7              MR. CAMERLIN:  Craig Camerlin for the
 8    defendant, Nicholas Diaz.
 9              THE COURT:  Good to see you again,
10    Mr. Camerlin.  I am glad you have recovered substantially
11    from the incident.
12              MR. CAMERLIN:  Thank you very much, your
13    Honor.
14              THE COURT:  I know counsel and the defendant
15    have, but, for the record, we've all reviewed the
16    presentence report?
17              MR. CAMERLIN:  I have, your Honor.
18              THE COURT:  In addition, I should state, and
19    this explains the slight delay, that I received additionally
20    an affidavit from the defendant's counsel explaining some of
21    the circumstances that underlie the preparation of the
22    report; a number of letters on behalf of Mr. Diaz submitted
23    by those who know him attesting to his character, generally
24    of the same theme, that he is a young man who started out
25    life very well, associated with the wrong people, and took a
```

1    wrong turn but still, in the midst of those who know him,

2    has a life that can be salvaged and turned around.

3         The government has also filed a motion, two

4    actually, one is the one that we know and discussed at the

5    plea hearing under Section 5K1.1, as well as a motion to

6    seal and impound, which I have allowed as of today and

7    another motion that factors directly on the sentence

8    recommendation that I believe the government is going to

9    make.

10        Before we get to the formal recommendation, I

11   gather from the lack of objections to the presentence report

12   that we essentially are in agreement with the probation

13   officer's calculation of the total offense level.  That is,

14   with the appropriate adjustments, the probation officer

15   calculates the total offense level at 21 with a Criminal

16   History Category I.

17        Among those adjustments, and an important one, is

18   the safety valve consideration, which the probation office

19   has determined defendant qualifies for.

20        As a consequence of that calculation, the

21   sentencing range would ordinarily, with the safety valve

22   consideration, be 37 to 46 months rather than the five-year

23   minimum mandatory sentence that otherwise would be required

24   under the circumstances.

25        Of course, the government's motion may further

```
1    impact at least its recommendation with respect to that

2    sentencing range.

3            So with that in mind, perhaps the government would

4    like to proceed with its recommendation, and if it has any

5    reasons for the recommendation, it would be appropriate to

6    hear them now.

7            MR. GRANT:  Your Honor, I won't speak at

8    length, but I will say that the government is recommending a

9    25 percent reduction from the low end of the Guidelines,

10   which, to my calculation, would be a nine-month reduction,

11   which would take us to about 28 months.

12           That is an appropriate sentence in this case.  It

13   does reflect significant credit that Mr. Diaz would be

14   getting for his willingness to assist the government.  And I

15   will say that his assistance did help resolve this case, as

16   well as the case of Mr. Vaddy, which the Court is going to

17   be sentencing soon.  And I think all of that saved the

18   government substantial resources, as well as saved the Court

19   resources in having to go through a trial.

20           So I think a nine-month reduction strikes the right

21   balance for what he did, what he was willing to do.  He

22   didn't actually have to testify, but, as I say, I think his

23   decision did have a substantial impact in the pleas that did

24   occur.

25           I would ask that the Court not give him more
```

PDF created with pdfFactory trial version www.pdffactory.com

1    assistance than that at this time.

2          As I look at the letters, it does appear that

3    Mr. Diaz actually had an unusual amount of moral guidance

4    that -- among the defendants that probably appear before

5    your Honor.  So one can only conclude that Mr. Diaz engaged

6    in some choices in his life, despite counseling by people

7    that were close to him, people who he ought to have

8    respected.  And even as we stand here today, the government

9    is still troubled by the number of domestic violence

10   incidents.

11         Now, that is not what he's being sentenced for, but

12   when you have somebody who has three different domestic

13   violence incidents, the first dating back to 2001, which

14   there was a continuation without a finding after sufficient

15   facts were shown.  That's significant, especially since

16   that's his ex-wife.  I understand that they have a child

17   together.  Domestic violence impacts children, and it shows

18   how much respect that men give to women, and those are

19   lessons that children internalize.

20         And then to see Mr. Diaz continue on with that into

21   2005, where his girlfriend is having to get a restraining

22   order against him, that's even more serious and perhaps the

23   most significant, because it's closest in time to his arrest

24   on December 28 of 2006, while he's facing charges here.

25         Now, if being in federal custody for some months

1   and being released on conditions for some months does not

2   have the power to concentrate one's mind, it's hard to

3   imagine what would.  But, yet, he got arrested again, and

4   that was why the court revoked his bond.

5          Now, that case was dismissed.  I don't know the

6   reason for that.  I do know that counsel -- that the victim

7   in that case, Ms. Walter, is, you know, inclined to be back

8   together with Mr. Diaz, and that could very well be

9   precisely the reason why that case was dismissed.

10         So, obviously, Mr. Diaz is going to be getting out

11  of jail in the relatively near future, and I think the

12  maximum period of supervised release would be appropriate in

13  this case to keep him on as short a leash as possible,

14  because there are clearly domestic violence problems that

15  have not been addressed, and I haven't seen anything spoken

16  to them.  I don't think any of the letters of reference talk

17  about how he's dealt with that issue, but the fact is, you

18  know, he's in a different position now.  He's now going to

19  be a convicted felon, and for him to continue to engage in

20  that behavior, which, I might say, was rather violent, is

21  not acceptable.  And I think there is a substantial societal

22  interest in keeping him under supervision.

23         So that would be the government's recommendation

24  for the amount of departure in terms of imprisonment and

25  then the amount of supervised release.

```
 1              THE COURT:  Does the government have a
 2   position on a fine?  The defendant has not provided
 3   financial information.  So I believe the Court is required
 4   to impose a fine.  It seems that with the reduction, it
 5   would also be appropriate, perhaps, to reduce the $7,500
 6   fine that the Guidelines otherwise --
 7              MR. GRANT:  The government has no problem with
 8   that.  Every indication that I've gotten is that he is a
 9   person of limited means.  So I would leave that to the
10   Court's discretion, but the government would not object to a
11   reduction.
12              THE COURT:  In terms of his prior custodial
13   status, he will be credited with what, six months?
14              PROBATION OFFICER:  All time spent in custody
15   will be credited towards a federal sentence.
16              THE COURT:  But not the state time.
17              PROBATION OFFICER:  As long as it wasn't
18   credited toward a state offense, which it was not -- the
19   charges were dismissed -- all time spent in either state or
20   federal custody since the commission of the federal offense
21   will be credited toward the federal charges.
22              MR. CAMERLIN:  Your Honor, I have it
23   calculated at 11 months.
24              THE COURT:  That's what it looks like to me.
25   I am just roughly running it through my head.
```

1          MR. CAMERLIN:  Actually, 323 days to be exact,

2   your Honor.

3          THE COURT:  Somewhat different from the 60

4   months that was contemplated at the plea.

5      Mr. Camerlin, what is your view?

6          MR. CAMERLIN:  Well, your Honor, as you can

7   see by the letters that were presented before you and

8   actually, as the government placed it, Mr. Diaz has been an

9   individual growing up that was subjected to quite a bit of

10  moral guidances.

11     He was a man of the church -- actually, a child of

12  the church, as his mother is a pastor who not only pastors

13  in Florida, but also still maintains somewhat of a religious

14  community up here in Massachusetts.

15     Now, with regard to that moral guidance, oftentimes

16  an individual, such as Nicholas Diaz, and he's a prime

17  example of it, find themselves in a situation where they

18  have the moral guidance on one hand and the city of Holyoke,

19  and the individuals in the city of Holyoke, those

20  individuals that he went to school with, goes to school

21  with, et cetera, appears on another hand.

22     It should be noted, your Honor, that even while

23  attending church, some of those same peers who attended

24  church with him are some of the same individuals that appear

25  in our newspapers every day.

1          It's not as if Mr. Diaz took his moral guidance and

2     made a conscious choice to say, I'm going to go over here,

3     join a gang, and sell drugs and ignore his moral guidance.

4          Mr. Diaz fully admits that he went with his peers,

5     with his crowd.  And that crowd, again, gradually went into

6     the system that we see, the social system that we see, of

7     the deteriorating inner cities, especially such as Holyoke.

8     And what do these individuals do when they have nothing

9     around them, for lack of a better word, to keep their hands

10    from being idle?  They get into the street scene.  They hang

11    around on the corner.  They start smoking marijuana.  They

12    start hanging around with other people who have similar

13    interests, maybe in marijuana, maybe in cocaine, maybe in

14    heroin.

15         Now we have an individual who is in the drug life.

16    Not to say Mr. Diaz ever had a substance abuse problem.  He

17    never has really had a substance abuse problem, but those

18    individuals that he is with, now he gets into a situation

19    that you saw before the Court.

20         Your Honor, with regards to his continuing, for

21    lack of a better term, after care from this case, this is an

22    individual who I first met when he was on supervised

23    release, during which there were no issues, except for that

24    one domestic violence issue that revoked his bond, which I

25    will address in a moment, your Honor.  There were no issues.

1    He was subjected to electronic monitoring, reporting, et

2    cetera.  No issues at all.

3         Now, he was allowed, by our motion, to go live with

4    his girlfriend, the mother of a child, the young child, a

5    young child who is very -- was very, very ill, and still

6    carries that illness with him, who had open heart surgery

7    while in Texas while my client was in Texas working.  And,

8    mind you, your Honor, he was working under his own Social

9    Security number, even while the warrant was out here.  He

10   had no idea the warrant was even out.  If he had, he,

11   obviously, would not be working for a major construction

12   company under his own Social Security number.

13        Now, your Honor, he was able to go live with his

14   girlfriend and his young son.  He was trying to find work at

15   the time.  The stresses of not having a secondary income in

16   that home caused an argument, an argument that was extremely

17   verbal, an argument in which he was asked to leave the

18   residence.  Again, your Honor, a verbal argument.  He could

19   not leave the residence.  He was on electronic monitoring.

20   Tempers flared even hotter.  A call to the police was made.

21        I represented Mr. Diaz in the Holyoke case for the

22   domestic violence.  It was dismissed, your Honor, based on

23   two reasons:  One would be perjury, and the other would have

24   been based on the lack of evidence to support an assault and

25   battery.

1          He maintained at that time, and maintains to this

2     day, and it was supported by Ms. Walter, that he never

3     touched her.

4          However, your Honor, taking that aside, the months

5     preceding that he was on prerelease -- I'm sorry.

6          He was on Pretrial Services, which there were never

7     an issue.

8          Now, with that in mind, your Honor, and the total

9     of 11 months that he has served on whatever sentence that

10    your Honor imposes, coupled with his forthrightness, him

11    finding himself back in the church -- he's very involved at

12    the House of Correction, very involved through letter

13    writing with his mother.  As a matter of fact, the person

14    whom he was living with prior to moving in with

15    Ms. Walter -- at pretrial services -- was one of the pastors

16    at the church.

17         Your Honor, he was making a concerted effort to be

18    a valued member of his community, of the same community,

19    Holyoke, which he was not a valued member of during this

20    transaction.  He is striving right now, and continues to

21    strive, to find his way back towards the church.

22         Now, not long ago his brother, Humberto [ph.] moved

23    with -- to his mother's house in Florida, and he found a

24    renewed faith in God.  Nicholas wishes to do something

25    extremely similar.

1     He was safe and had friends, family, and a church

2     that he regularly attended in Texas when he was arrested.

3     He has two options, and it's an option that his

4     family is going to help him make a proper choice to:

5     Florida or Texas.

6     Your Honor, if in the right environment, I would

7     suggest to this Honorable Court this young man is not only a

8     conscientious and respectable citizen, but also a valued

9     citizen.

10     He is going to have a felony conviction following

11     him for the rest of his life.  He has to live with that.  He

12     accepts responsibility for that.

13     And what does he do to accept responsibility for

14     that?  He steps up to the plate and says, Yes, I did it.

15     Furthermore, we're looking at certain issues in

16     which Mr. Diaz said, I want to be an individual who can help

17     maintain order in the community, and we're seeing that with

18     other parts of this plea and with others pleading out in

19     their cases.

20     Your Honor, based on all of this, based on the fact

21     this he has a very young son who is sick, continues to be

22     relatively ill, a young woman who wants him back in their

23     life -- and you will see from his record there were no

24     problems in Florida when he was living there, no problem in

25     Texas when he was living there, it was only when he was back

PDF created with pdfFactory trial version www.pdffactory.com

1    in Holyoke, back into the, quote/unquote, scene, that that

2    peer group, that he has problems.

3         I would suggest to this Court this young man can

4    positively influence the community in which he would reside.

5         I would suggest to this Court that this young man

6    has not only learned his lesson, but has gone above that;

7    not only in admitting his guilt, but also in enabling

8    himself to grow as a person.

9         I would suggest to this Court, your Honor, that if

10   the minimum sentencing range is 28 months, with his 11

11   months he has already served would leave a balance of 17

12   months.  I would suggest to this Court that Mr. Diaz and the

13   community would be far better served by him having served

14   the 11 months that he has served.

15        The sentence I am suggesting to this Court is four

16   years' supervised release, and that would be following the

17   time that has also has already served.  So, in essence, time

18   served plus four years' supervised release.

19        The fine, your Honor, we would leave to the Court's

20   discretion.  He is a man of limited means.  He is going to

21   be supporting a family and we would like for him to have the

22   opportunity to provide not only for his family, but also to

23   provide for the community.  And, your Honor, that is why

24   we're asking for time served plus four years' supervised

25   probation.

1        Thank you.

2                THE COURT:  Mr. Diaz, you're not required to

3    address the Court, but I would like to hear from you, if you

4    would like to be heard, on the subject of the sentence.

5                MR. CAMERLIN:  Your Honor, I think that would

6    be good.  This is an individual who has changed so

7    dramatically that I think he can represent himself.

8                THE DEFENDANT:  First of all, your Honor, I

9    would like to apologize for my actions.  I would like to

10   apologize to the government, to the community, to God, first

11   and foremost.

12               Like the letter say, I was brought up in a good

13   environment.  I was brought up in church.

14               But, like my lawyer said, I was born and raised in

15   Holyoke.  I went to school with these individuals, you know,

16   and I'm not making excuses for my actions.

17               I made a mistake in my life, and you can tell I

18   don't have no juvenile record.  I'm 26 years old.

19               I made a mistake.  I got married young.

20               You know, it was hard.  Life was hard, you know,

21   especially in Holyoke, and especially, you know -- I didn't

22   graduate from high school, but I got my GED when I was 16.

23   And those are mistakes that -- you know, they haunt you as

24   you progress in the future.

25               I worked for Fleet Bank.  I worked for CitiBank.  I

worked for Mericorp.  I tutored kids.  I've run after-school
programs.  I used to be a youth leader in the church.

I made a mistake, and this mistake has opened up my
eyes to realize that the path my mom showed me was the right
path.  I just made a mistake, and I feel terribly sorry for
my actions.  I know that I will never -- I would never walk
in that path again.  I don't want to know nothing about
drugs.  I don't want to know nothing about conspiracy.  I
don't know nothing about that.  I am new to this.

It's hard.  When my son needed me the most -- he's
two years old -- and I wasn't there for him.  And we -- I
didn't have my father growing up, and I want to be there for
my kids.  I just want to be a family man and live the
American dream, like all you guys live the American dream.
That's all I want.

I want -- and my girl right now, she wants to go to
church.  She wants to pursue religious with me, Pentecostal
with me, and I just ask that I might be able to do that with
her, you know what I'm saying?

I made a mistake.  I want to leave from Holyoke.
There is nothing in Holyoke for my family, for my kids.
There is nothing there.

In Texas, I was working.  Sooner or later I was
going to become a kitchen manager.  I know I'm going to be a
convicted felon right now, but I can still go over there and

get my job back, and go just go church, go to church with my
family and try to pursue my life.

My girl right now, she's in college pursuing to
become a nurse.  And right now she would have been here, but
she's taking her finals.  I told her, Take your finals.
It's more important, her career.

And that will help me out a lot, because I won't
have to -- I can depend on her.  She can depend on me.  I
can get a little job, and we can help each other, you know?

My son still needs me.  He's still fragile right
now, you know what I'm saying?  And it's hard for her.
She's 20 years old.  It's our first child tother.  I have
another child with my ex-wife, but I wasn't able to be
with -- it's her first child.  It's hard on her.  It's a
burden on her, you know?

She just had one kid, open-heart surgery.  I wasn't
there for her.  This situation has been a burden on her.  It
has been hard on both of us.

And I can honestly say I've learned my lesson.  I
don't want to know nothing about those people.  Those people
aren't my friends.  My only friends are the ones that wrote
the letters, that have been supporting me through all of
this, you know what I'm saying, all the people I grew up
with.

And I just ask for mercy and grace, that's all,

PDF created with pdfFactory trial version www.pdffactory.com

```
1    just for an opportunity to prove to the government that I
2    made a mistake.
3                 THE COURT:  Thank you, Mr. Diaz.
4                 MR. CAMERLIN:  I can, your Honor, echo that
5    Ms. Walter did call my cellphone early this morning
6    explaining that she did have a summer class final and would
7    try to get her for 2:30.
8                 THE COURT:  I fully understand.
9                 MR. CAMERLIN:  I wanted to let you know that.
10                THE COURT:  Did you want to wait for a few
11   minutes?
12                MR. CAMERLIN:  Not at all, your Honor.
13        I am just saying that the support is there.  It's
14   not as if he doesn't have anybody here.  It's just that she
15   is pursuing a nursing degree.  He stated, Go take your
16   final.
17                THE COURT:  No, I understood.
18        (Whereupon, the Court and probation officer
19   confer.)
20                THE COURT:  All right.
21        I am impressed with Mr. Diaz' sincerity.  I am
22   impressed with the letters I received and what I've read of
23   his background.
24        I think this is an uncharacteristic episode in his
25   life.  I think the letter was exactly right.  He's someone
```

1    who met false friends and now is suffering from the

2    consequences of some bad decisions.  I have no reason to

3    doubt that he can't correct those decisions and lead the

4    life that I think he is quite capable of leading.

5            That means that the only real consideration that I

6    have to take into account is the crime itself.  I think time

7    served is unrealistic, but I think some short sentence need

8    be imposed, but not a sentence any longer than that that I

9    think is sufficient to acknowledge the seriousness with

10   which society takes this particular kind of crime.

11           Mr. Camerlin, one thing you did not address was the

12   fine.

13           MR. CAMERLIN:  I said I would leave that to

14   the Court's discretion.  I apologize, your Honor.  I know --

15   I understand it's a $7,500 fine with the Court, and the

16   government -- actually, without the government's lack of

17   objection to the Court lowering the fine, if it could be

18   in -- with a four-year supervised probation, in the

19   neighborhood of, say, $3,000 that --

20           THE COURT:  I was actually thinking of less.

21   I was thinking of a thousand dollars.

22           MR. CAMERLIN:  On each count?

23           THE COURT:  Yes.

24           MR. CAMERLIN:  Okay.

25           THE COURT:  Understanding that 11 months or so

1    has been served in custody, that there will also be

2    additional good-time credit awarded, I think a sentence of

3    24 months is appropriate under the circumstances, and that

4    will be the sentence I will impose.

5           I understood the four years was meant to somewhat

6    extend supervision.  I am not sure four years is necessary.

7    I think a three-year supervised release term will be

8    sufficient under the circumstances.  I think if his life

9    turns around, it's going to turn around in three years.

10   Another year of supervision, I don't think, is necessary

11   under the circumstances.

12          Mr. Diaz, pursuant to the Sentencing Reform Act of

13   1984, and having considered the sentencing factors as they

14   are set out in Title 18, United States Code,

15   Section 3553(a), and considering the motions that have been

16   brought before the Court, it is the judgment of the Court

17   that you be committed to the custody of the Bureau of

18   Prisons for a term of 24 months.  This term will be served

19   concurrently on each count of conviction.

20          You will, of course, be credited for the time that

21   you have spent in custody awaiting disposition of this case.

22          Upon release from custody, you will be placed on

23   supervised release for a term of three years.  Again, this

24   term will be served concurrently on each count of

25   conviction.

PDF created with pdfFactory trial version www.pdffactory.com

1    Within 72 hours of release from custody, you must

2    report to the Probation Office in the district to which you

3    are released, which almost certainly will be Massachusetts.

4    It is further ordered that you pay to the United

5    States a fine of $2,000.  That will consist of a fine of

6    $1,000 on Count I and a fine of $1,000 on Count III.  The

7    fine can be paid immediately but, more realistically, will

8    be paid over your period of supervised release on a

9    Court-approved repayment schedule.

10    You will, so long as the fine is outstanding,

11    notify the United States Attorney for this district of any

12    change in your mailing or residence address.

13    While on supervised release, you will comply with

14    the following terms and conditions:

15    You will not commit any federal, state or local

16    crime, nor will you illegally possess a controlled

17    substance.

18    You will refrain from any unlawful use of a

19    controlled substance.

20    You will submit, as the law requires, to one drug

21    test within 15 days of release from custody and at least two

22    periodic tests thereafter, not to exceed 104 tests per year,

23    as directed by the Probation Office.

24    You will submit, as the law requires, to the

25    collection of a DNA sample, again, as directed by the

Probation Office.

You will comply with the standard conditions that have been adopted by the Court.  These are set out in the United States Sentencing Guidelines, Section 5D1.3(c), and will be set forth in detail in the judgment.

You are prohibited from possessing a firearm, destructive device or any other dangerous weapon.

As I previously indicated, you will repay the balance of any fine outstanding according to a Court-ordered repayment schedule.  You are not to incur new credit charges or open additional lines of credit without the approval of the Probation Office while any financial obligation with respect to the fine remains outstanding.

You will provide the Probation Office access to any requested financial information.  That may be shared with the Financial Litigation Unit of the US Attorney's Office.

You are not to associate with my members of the Latin Kings street gang, Latin Queens gang, or any other street gang of a similar nature.

You will participate in a certified batterer's intervention program, again, as directed by the Probation Office.

It is further ordered that you pay to the United States a special assessment of $200.  That will be due immediately.

PDF created with pdfFactory trial version www.pdffactory.com

1          Do counsel see any technical errors in the sentence
2     dictated?
3               MR. CAMERLIN:  No, your Honor.
4               MR. GRANT:  No.
5               THE COURT:  Sentence will then be imposed as
6     orally dictated by the Court.
7          Please advise Mr. Diaz of his right of appeal.
8          (Whereupon, the Court and deputy clerk confer.)
9               THE COURT:  Mr. Diaz, you have a right to
10    appeal this sentence.  The appeal must be filed within ten
11    days.  If you cannot -- although you are represented by
12    counsel, should you choose to appeal and for whatever reason
13    counsel does not or is not willing to file the appeal on
14    your behalf, the clerk will do so at your request.
15    Remember, there is a ten-day period of time in which an
16    appeal must be filed.
17         All right.  If there is something further, I am
18    going to return the papers to you, including the character
19    references, which will become part of the presentence
20    report.  The affidavit of counsel --
21              MR. CAMERLIN:  I would ask that my affidavit
22    be placed under seal.
23              THE COURT:  The affidavit and other documents
24    subject to sealing will be so sealed.
25         Mr. Diaz, good luck.  I really do think you can

```
 1          turn your life around.

 2                      THE DEFENDANT:  Thank you, sir.

 3                      THE COURT:  Everyone at this point -- it's sad

 4          enough, and the incentive to be sincere is high, but in your

 5          case, I really believe you.

 6                      THE DEFENDANT:  Thank you, your Honor.

 7                      MR. CAMERLIN:  Thank you very much, your

 8          Honor.

 9                      THE COURT:  Which is why I think a shorter

10          sentence is appropriate in your case, and I think you will

11          turn your life around.  So good luck.

12                      THE DEFENDANT:  Thank you, your Honor.

13                      MR. CAMERLIN:  Thank you, your Honor.

14                      THE DEFENDANT:  God bless you.

15                      THE CLERK:  All rise.

16                  Court is in recess.

17                  (Proceedings adjourned.)

18

19

20

21

22

23

24

25
```

### C E R T I F I C A T E

       I, James P. Gibbons, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

JAMES P. GIBBONS, CSR, RPR, RMR
Official Court Reporter
1 Courthouse Way, Suite 7205
Boston, Massachusetts 02210
(617) 428-0402

PDF created with pdfFactory trial version www.pdffactory.com